UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANNY G. HARMON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-00082-JMS-DML |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**Entry Denying Motion for Reconsideration**

The Court granted petitioner Danny Harmon's second amended motion for relief pursuant to 28 U.S.C. § 2255 on March 6, 2018, and entered Final Judgment that same date. Before the Court is the government's motion to reconsider pursuant to Federal Rule of Civil Procedure 59(e). For the reasons explained below, the government's motion to reconsider, dkt. [77], is **denied**.

**I. Legal Standard**

Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." The purpose of a Rule 59(e) motion is to have the Court reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst and Whinney*, 489 U.S. 169, 174 (1988). However, a Rule 59(e) motion "is not a fresh opportunity to present evidence that could have been presented earlier." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 770 (7th Cir. 2013). Nor does Rule 59(e) "entitle a party to advance after judgment a non-jurisdictional argument that could have been presented prior to judgment." *Lardas v. Grcic*, 847 F.3d 561, 566 (7th Cir. 2017). Instead, to receive the requested relief, the moving party "must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry

of judgment." *Id.* A "manifest error" means "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Relief through a Rule 59(e) motion for reconsideration is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

## II. Discussion

The government argues that the Court committed multiple manifest errors in granting Mr. Harmon's motion for relief pursuant to § 2255. The Court will begin by discussing the propriety of the government's arguments in a Rule 59(e) motion. Next, the Court will discuss the government's arguments as they relate to the performance and prejudice elements of Mr. Harmon's ineffective assistance of counsel claim. Lastly, the Court will discuss the government's objection to the Court's proposed remedy. The following discussion assumes a knowledge of and incorporates the factual background and analysis in the Court's Entry granting Mr. Harmon relief issued on March 6, 2018.

### A. Rule 59(e) Standards

Certain of the government's arguments are properly raised in a Rule 59(e) motion—such as the government's argument that the Court improperly used hindsight in a manner contrary to *Strickland*—as they directly respond to how the Court applied the law and thus could not have been raised earlier. These arguments are discussed below.

But many of the government's argument could have been raised prior to Final Judgment and thus should not have been raised for the first time in the government's Rule 59(e) motion.[1]

---

[1] The government implicitly recognizes that certain of its arguments could have but were not raised prior to Final Judgment, when it states that one of its reasons for filing a Rule 59(e) motion was that "the government did not have an opportunity to file a post-hearing brief (which has been available in similar recent cases)." Dkt. 77, p. 1 n. 1. The lack of post-hearing briefs does not excuse the failure to not raise these arguments. Closing arguments were made by both parties at

*See Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) ("[Rule 59(e)] motions are not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment[.]") (citation and quotation marks omitted). For example, the following arguments all could have been raised in briefing or during closing arguments at the hearing, but were not: (1) Mr. Harmon's testimony that he would have entered an open plea if he knew about it is insufficient to establish prejudice, and he must instead present additional objective evidence; (2) Mr. Harmon did not have a viable window in which to enter an open plea; and (3) Mr. Harmon's requested remedy of a full re-sentencing presents double jeopardy concerns and provides him with an undue windfall. These and other arguments addressed below could have been raised prior to the government's Rule 59(e) motion.

It is within the Court's discretion to reject these arguments for failure to raise them prior to Final Judgment, and the Court does so here. *See Lardas*, 847 F.3d at 566. Although the Court also rejects these arguments on the merits below, this is only to err on the side of thoroughness and to provide an alternative basis to deny the Rule 59(e) motion.

### B. Deficient Performance

Before addressing the specifics of the government's arguments relating to the performance of Mr. Harmon's counsel, Jack Crawford, the Court must first address two difficulties with the government's arguments. First, the government's hindsight argument fails to analytically separate the performance and prejudice elements of an ineffective-assistance-of-counsel claim. These are distinct inquiries that require different analyses. The performance inquiry requires the Court to

---

the end of the hearing. Moreover, the government did not request an opportunity to submit a post-hearing brief during the hearing or by way of a written motion after the hearing, when no such briefing was ordered by the Court. The government's regret that it did not have this opportunity comes only after the Court ruled in Mr. Harmon's favor.

determine whether "counsel's representation fell below an objective standard of reasonableness," while the prejudice analysis asks if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The government is correct that counsel's performance cannot be judged based on hindsight—that is, the Court must "reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The prejudice inquiry, however, requires the Court to predict what would have happened but for counsel's deficient performance. Analyzing these elements separately is critical, and the government's failure to do so throughout its brief makes addressing its arguments difficult.

Second, and more importantly, the government argues as if Mr. Harmon could only have entered an open plea to the drug charges before the superseding indictment was filed, which added the attempt to kill and intimidate a witness charges. For example, the government argues that "the window of time the Court envisioned for [Mr.] Harmon to plead 'open' did not in fact exist." Dkt. 77 at p. 7 (capitalization altered). But the Court's analysis did not depend on Mr. Harmon entering an open plea before the superseding indictment. Mr. Harmon could have entered an open guilty plea to just the drug charges at any time, including long after the superseding indictment was filed. Nor, as the government argues later in its motion, did Mr. Harmon himself predicate his claim "on pleading open *before* the superseding indictment." *Id.*, p. 20 (citing dkt. 14, p. 15). The government cites Mr. Harmon's First Amended Motion to Vacate in support of this argument, but his Second Amended Motion to Vacate superseded his First Amended Motion and was operative at the time of the hearing. It contains no such limitation on Mr. Harmon's claim. *See* dkt. 67 at p. 3 ("Trial counsel was ineffective by failing to properly advise Petitioner that he could choose to plead guilty without the benefit of a plea agreement or cooperation with the Government."). Thus,

contrary to the government's position in the instant motion, neither Mr. Harmon's arguments nor the Court's analysis depended on Mr. Harmon entering an open plea before the superseding indictment added the witness charges against him. Following the superseding indictment, Mr. Harmon could have entered an open plea to the drug charges and proceeded to trial on the witness charges.

With these two important points in mind, the Court turns to the performance element. The Court concluded that Mr. Crawford's performance was deficient in four respects:

> First, he failed to recognize and communicate to Mr. Harmon the strength of the government's case as it changed over time. Second, he advised his client either that he could only plead guilty if he cooperated with the government (according to Mr. Harmon), or that he should not plead guilty because the acceptance of responsibility reduction would not be of any benefit to him (according to Mr. Crawford). Third, he failed to extend and participate in plea negotiations with the government. Fourth, he operated under the belief that if Mr. Harmon wanted to plead guilty, Mr. Harmon would have to plead guilty to all charges, not just the drug charges.

Dkt. 75, p. 7.

Contrary to the government's position, the Court did not utilize hindsight in reaching these conclusions. For example, the Court only considered information known to Mr. Crawford when concluding that he failed to recognize and communicate the strength of the case against Mr. Harmon as it changed over time. As set forth in detail in the Court's Entry, *see* dkt. 75, pp. 11-12, there was substantial evidence known to Mr. Crawford that Mr. Harmon was guilty of the drug charges. Yet even after having this information, Mr. Crawford incorrectly and continuously told Mr. Harmon that the case against him was "weak" and "bullshit," and Mr. Crawford's opinion about this never changed. The fact that Mr. Crawford made these representations to Mr. Harmon when Mr. Crawford knew that the government's case was actually strong constitutes deficient performance. And, importantly for the purposes of the government's motion, this conclusion is

reached only by assessing what Mr. Crawford knew at the time—that is, it is reached without hindsight.[2]

Hindsight was also irrelevant when considering whether it was deficient performance for Mr. Crawford to incorrectly represent the law to Mr. Harmon by telling him that he could only plead guilty if he cooperated with the government. An open plea—at any time before trial—would have allowed Mr. Harmon to plead guilty to the drug charges without cooperating with the government. Mr. Harmon testified that he relied on Mr. Crawford's statement about his ability to plead, and the Court credited Mr. Harmon's testimony. *See, e.g.*, dkt. 68, pp. 50-52. Similarly, Mr. Crawford incorrectly stated to Mr. Harmon that he had to plead guilty to all of the charges or not at all. *Id.*, p. 44. Simply put, Mr. Crawford provided incorrect legal advice to Mr. Harmon in two important respects, and this constitutes deficient performance. The Court did not rely on hindsight in reaching this conclusion.

Finally, hindsight is also unnecessary to conclude that Mr. Crawford's representations to Mr. Harmon regarding what conduct he would have to admit in order to gain a decrease of two offense levels under U.S.S.G. 3E1.1 for acceptance of responsibility were inaccurate statements of the law, as detailed in the Court's Entry. *See* dkt. 75, pp. 12-13.

Noticeably absent from the government's hindsight arguments are how the four specific ways in which the Court concluded Mr. Crawford provided deficient performance were infected with hindsight. Giving unquestionably incorrect legal advice—at least with respect to settled areas of law—is deficient performance whenever it is given. The performance inquiry asks only whether "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466

---

[2] The government acknowledges that grossly mischaracterizing evidence and convincing a client to go to trial can constitute deficient performance. *See* dkt. 77, p. 20.

U.S. at 688, and it could not be objectively reasonable for Mr. Crawford to incorrectly represent well-settled law to his client, especially when the legal advice was important to how Mr. Harmon would proceed. *See, e.g.*, *United States v. Lewis*, 477 Fed. Appx. 79, 82 (4th Cir. 2012) ("[W]e cannot expect criminal defense lawyers to be seers, [but] we must demand that they at least apprise themselves of the applicable law and provide their clients with a reasonably accurate description of it.") (citation and quotation marks omitted); *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) ("Ignorance of well-defined legal principles is nearly inexcusable."). The government does not meaningfully attempt to show that the law requires otherwise.

In sum, the government has failed to show that the Court committed a manifest error in concluding that Mr. Crawford's performance was deficient.

**C.     Prejudice**

The government takes issue with the Court's prejudice determination in several respects. The Court begins by reviewing the relevant law regarding prejudice. The prejudice inquiry asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). For Mr. Harmon, who did not enter an open plea but instead went to trial, prejudice requires him to show that there is a reasonable probability he would have entered an open plea to the drug charges. *See id.*

First, the government argues that Mr. Harmon failed to present any objective evidence that he would have entered an open plea to the drug charges rather than proceeding to trial. They point out that when Mr. Crawford asked Mr. Harmon about a plea agreement including a sentence of

thirty years' imprisonment Mr. Harmon said, "forget that," dkt. 68, p. 30, and an open plea would expose him to a sentence of close to thirty years. Relatedly, the government points out that none of the pre-trial phone calls between Mr. Harmon and Mr. Crawford played during the hearing showed that Mr. Harmon desired to plead guilty.

The government is correct that the Seventh Circuit has held that a "mere allegation . . . that [the defendant] would have insisted on going to trial is insufficient to establish prejudice. Instead, he must go further and present objective evidence that a reasonable probability exists that he would have taken that step."[3] *Long v. United States*, 847 F.3d 916, 923 (7th Cir. 2017) (citations and quotation marks omitted). It follows that the converse is true: there must be objective evidence showing a reasonable probability that Mr. Harmon would have entered an open plea rather than proceeding to trial.

Contrary to the government's position, Mr. Harmon met this showing. The objective-evidence requirement can be met with the plaintiff's own statement, credited by the Court, that he would have pled guilty, so long as the relevant circumstances are consistent with this statement. *See Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.").

The Court credited Mr. Harmon's testimony that he would have pled guilty to the drug charges had he known he could plead guilty without cooperating with the government and if he had known the strength of the government's case against him. The contemporaneous circumstances

---

[3] Notably, though, the Seventh Circuit has called into question the objective-evidence requirement, stating that it has "shaky foundations." *Foster v. United States*, 735 F.3d 561, 567 (7th Cir. 2013).

support this.  Mr. Harmon admitted to Mr. Crawford that he was guilty of the drugs charges from the beginning, although he denied he was guilty of the witness tampering charges.  This is consistent with being willing to plead guilty to the former but not the latter.  It is also entirely understandable that Mr. Harmon had no interest in entering a plea agreement requiring thirty years' imprisonment, nor expressed to Mr. Crawford a desire to plead guilty, because Mr. Crawford consistently and incorrectly represented to Mr. Harmon that the government had no case against him.  When counsel's constitutionally deficient performance caused Mr. Harmon to believe there was no reason to plead guilty, it makes little sense, as the government requests, for the Court to hold his false belief against him when assessing prejudice.[4]  In sum, the "contemporaneous evidence," *Lee*, 137 S. Ct. at 1967, is consistent with Mr. Harmon's credible testimony that he would have pled guilty to the drug charges but for counsel's deficient performance, and thus the Court did not make a manifest error.

The government next argues that only in hindsight does it even appear that Mr. Harmon had a viable option to enter an open plea to the drug charges.  If there ever was an option to enter an open plea, the government argues, "any such promise had passed before [Mr.] Crawford entered an appearance in this case."  Dkt. 77 at p. 7.  According to the government, even after an open plea to the drug charges, "the government almost certainly still would have brought the witness-related

---

[4] The government also makes much of the fact that, in a letter to his appellate attorney following trial, Mr. Harmon expressed several problems with Mr. Crawford, but did not complain about his failure to advise him to plead guilty.  *See* dkt. 77, pp. 15-16.  But there is no evidence that, at the time Mr. Harmon wrote this letter, he knew he could have entered an open plea to the drug charges.  Thus this argument, like many of the government's arguments, fails to account for Mr. Crawford's inaccurate representations of the law to Mr. Harmon.  If Mr. Harmon did not know he could have entered an open plea without cooperating with the government, he would have no reason to lodge such a complaint about Mr. Crawford.

charges." *Id.* at p. 8. More generally, the government faults the Court for not considering the witness charges in its prejudice analysis.

As noted above, the government is incorrect that the Court's analysis depended on Mr. Harmon entering an open plea at a specific time. Mr. Harmon could have entered an open guilty plea to just the drug charges at any time, including long after the superseding indictment was filed, and proceeded to trial on the witness charges. Again, this would have been consistent with Mr. Harmon's statements to his counsel that he committed the drug offenses but not the witness offenses. And had Mr. Harmon done so, it is difficult to see how the witness charges—and the prospect of being found guilty of them—would affect the Court's prejudice analysis in the way the government suggests.

The Court has already concluded that Mr. Harmon has met his burden to prove that he would have entered into an open plea on the drug charges but for counsel's deficient performance, so all that remains is for the Court to determine whether there is a reasonable probability that the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As explained in the Court's Entry, *see* dkt. 75, p. 16, there is a reasonable probability that Mr. Harmon would have received a lesser sentence for the drug charges had he entered an open plea to them. It is unclear what, if any, effect the witness charges would have on this, even without the benefit of hindsight. This is especially true given that, as the government recognizes, dkt. 77, p. 9, Mr. Harmon faced a lower sentencing range on the witness charges than on the drug charges, and there is a reasonable probability that the Court would have sentenced him concurrently on those charges.[5]

---

[5] The Court does not rely on hindsight in assessing prejudice, including the fact that Mr. Harmon was acquitted of the witness charges at trial. But hindsight is arguably permissible when assessing prejudice, although this question appears somewhat unsettled. *See Shaw v. Wilson*, 721 F.3d 908, 918 (7th Cir. 2013) ("[W]hen evaluating prejudice, unlike when evaluating attorney performance, hindsight is permissible."); *see also Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993) (explaining

The government's focus on what would have happened with the witness charges loses sight of the fact that the Court need only conclude that there is a reasonable probability the result of the proceeding would have been different, which "needn't be a 50 percent or greater chance." *Stanley v. Bartley*, 465 F.3d 810, 814 (7th Cir. 2006). The government is perhaps correct that Mr. Harmon may have ultimately been found guilty of the witness charges, or that the open plea to the drug charges would not have worked out in Mr. Harmon's favor. But there is also a reasonable probability that the government may have elected not to proceed with the witness charges after an open plea to the drug charges, or that Mr. Harmon would have been acquitted of the witness charges, or, if convicted, he would have received a lesser sentence than on the drug charges that would have run concurrently. If any of these possibilities occurred, an open plea to the drug charges would have benefitted Mr. Harmon. Thus the Court's decision not to focus on the witness charges was warranted and not a manifest error.

Finally, the government contends that the Court expanded *Strickland* in a manner inconsistent with Supreme Court precedents. The Court's reasoning, says the government, is inconsistent with the Supreme Court's dictate that "defendants have no right to be offered a plea." *Lafler*, 566 U.S. at 168 (citing *Missouri v. Frye*, 566 U.S. 134, 148 (2012)). If a defendant is not entitled to a negotiated plea option, the government suggests that it conflicts with *Lafler* for the Court to reason that he is entitled to an unnegotiated plea option. *See* dkt. 77, p. 17.

---

why hindsight is permissible when analyzing the prejudice element of an ineffective-assistance-of-counsel claim); *Eddmonds v. Peters*, 93 F.3d 1307, 1326 n.5 (7th Cir. 1996) ("Hindsight is relevant only to the question of prejudice, not to that of deficient performance."); *cf. Miller v. Zatecky*, 820 F.3d 275, 278-79 (7th Cir. 2016). Although the Court's conclusion with respect to prejudice would be the same either way, if hindsight could be considered the prejudice analysis would be rather straightforward, since the jury's finding that Mr. Harmon was not guilty of the witness charges could be considered.

But there are clear differences between the prejudice analysis when a defendant says he would have pled guilty via a plea agreement and when he says he would have entered an open plea. The most obvious being that that the government has no control over the latter situation, but has complete control over the former. This difference is critical to the reasoning in *Frye*, which holds that in order to show prejudice in the plea-agreement context defendants "must also show that, if the prosecution had the discretion to cancel it . . . , there is a reasonable probability [that] the prosecution . . . would [not] have prevented the offer from being accepted or implemented." 566 U.S. at 148. The Supreme Court described this additional requirement as "of particular importance because a defendant has no right to be offered a plea." *Id.* It thus follows that, when a defendant has sole control over his right to enter an open plea, this additional showing is not required. Accordingly, the Court rejects the government's suggestion that its decision conflicted with *Lafler* or *Frye* and impermissibly expanded *Strickland*.[6]

The government's various arguments fail to demonstrate that the Court made a manifest error in concluding that Mr. Harmon was prejudiced by Mr. Crawford's deficient performance.

**D.  Remedy**

The government's final argument is that the Court's proposed remedy—resentencing Mr. Harmon as if he entered an open plea to the drug charges and permitting him to ask for the acceptance of responsibility reduction during resentencing—is contrary to the law. Specifically,

---

[6] The government asserts that the Court's decision announced a "new rule" that the "failure to provide pinpoint advice about an open plea prospect is *per se* constitutionally deficient performance." Dkt. 77, p. 18-19. Nothing in the Court's decision even approaches the creation of a *per se* rule. As instructed by the Supreme Court, the Court engaged in a "case-by-case examination," *Lee*, 137 S. Ct. at 1966 (citation and quotation marks omitted), and concluded that Mr. Crawford's gross misrepresentations about the strength of the government's case and his multiple incorrect statements about the law constituted deficient performance in this case. The Court need not and does not decide whether similarly false legal advice regarding the availability of an open plea would constitute deficient performance in other circumstances.

the government contends that "the Court's imposed remedy either injects a double jeopardy issue into this case, or rewards [Mr.] Harmon with a windfall." Dkt. 77 at p. 23. The government relies solely on the following language from *Lafler* to support its argument: "Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests," thus the remedy must "neutralize the taint of a constitutional violation, while at the same time not grant a windfall to the defendant." 566 U.S. at 170 (citations and quotation marks omitted).

The Court's remedy is consistent with the guidance in *Lafler*. But for Mr. Crawford's deficient performance, Mr. Harmon could have entered an open plea to the drug charges and could have argued at sentencing for a two-point reduction in his offense level for acceptance of responsibility.

The government suggests that this is an impermissible "windfall" for Mr. Harmon because double jeopardy protections prevent the government from re-trying Mr. Harmon on the witness charges, since he was found not guilty at trial. Notably absent, however, is any suggestion from the government what a more appropriate remedy would be. It cannot be, as the government's lack of suggested remedy implies, that there is no remedy for a defendant whose counsel was ineffective with respect to some charges, when the government does not get to re-try the defendant on related, yet different charges. Moreover, the government asserts that Mr. Harmon "never" could have been in the position in which he now finds himself. But that is simply not true. As explained above, Mr. Harmon could have entered an open plea to the drug charges, proceeded to trial on the witness charges, and been found not guilty. Had that occurred, Mr. Harmon would find himself in the exact position the Court's order places him.

Of course the Court cannot rewind time, but its order places Mr. Harmon in as close to the position he would have been had his counsel not provided ineffective assistance, without granting him a windfall. This is in accordance with the Supreme Court's guidance, which suggests the Court has some discretion in fashioning the appropriate remedy. *See Lafler*, 566 U.S. at 171 (holding that once it has been determined that the defendant would have entered a plea but for counsel's errors, "the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between."). Accordingly, the Court did not make a manifest error in ordering the remedy it did.

### III. Conclusion

For the reasons explained above, the government's motion for reconsideration, dkt. [77], is **denied**.

**IT IS SO ORDERED.**

Date: 5/23/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE
michelle.brady@usdoj.gov

Pamela S. Domash
UNITED STATES ATTORNEY'S OFFICE (Evansville)
pamela.domash@usdoj.gov

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
breitz@usa.doj.gov

Sara Varner
INDIANA FEDERAL COMMUNITY DEFENDERS
sara.varner@fd.org

Joe Howard Vaughn
UNITED STATES ATTORNEY'S OFFICE
joe.vaughn@usdoj.gov

James Robert Wood
UNITED STATES ATTORNEY'S OFFICE
bob.wood@usdoj.gov